```
               UNITED STATES DISTRICT COURT
               NORTHERN DISTRICT OF INDIANA
                     HAMMOND DIVISION
```

GREGORY G. TONEY,                )
                                 )
    Plaintiff               )
                                 )
    vs.                     )   2:07-cv-307
                                 )
ACCOR NORTH AMERICA, d/b/a       )
Motel 6,                         )
                                 )
    Defendant               )

## OPINION AND ORDER

This matter is before the court on the Motion for Summary Judgment [DE 35] filed by the defendant, Accor North America d/b/a Motel 6, on August 17, 2009; the Motion to Strike Declaration of Kevin Wright [DE 52] filed by the plaintiff, Gregory G. Toney, on September 17, 2009; the Motion to Strike Declaration of Perry James Herzog [DE 53] filed by the plaintiff on September 17, 2009; the Motion to Strike Portion of Declaration of Sharon Weyant [DE 54] filed by the plaintiff on September 17, 2009; and the Motion for Leave to File Supplemental Authority [DE 67] filed by the plaintiff on December 21, 2009.  For the reasons stated below, the Motion for Summary Judgment [DE 35] is **GRANTED IN PART** and **DENIED IN PART**, the Motion to Strike Declaration of Kevin Wright [DE 52] is **DENIED AS MOOT**, the Motion to Strike Declaration of Perry James Herzog [DE 53] is **DENIED AS MOOT**, the Motion to Strike Portion of Declaration of Sharon Weyant [DE 54] is **DENIED AS MOOT**, and the Motion for Leave to File Supplemental Authority [DE 67] is **GRANTED.**

Background

The plaintiff, Gregory G. Toney, was injured in a fall while a guest at Motel 6 in Merrillville, Indiana. Toney had been staying at the motel for nearly three weeks while working as a boilermaker at a local BP plant. Toney shared a room at Motel 6 with his brother, Gerald Toney, who also was working at BP as a boilermaker. On April 26, 2007, at about 5:30 p.m., the Toney brothers arrived at the motel from work with Marty Graham, another co-worker and carpooler. Graham walked into Motel 6 first, and the mat on the ceramic-like floor inside the stairway vestibule slipped and became "kind of wrinkled up" when he stepped on it. Graham states that he smoothed it out, noting that "it was foamy underneath." (Graham Dep., DE-48-4, p. 8) Graham then proceeded into the office to pay his rent and reported the slipping condition of the mat to the desk clerk, Antimonette Ajani, who was on the phone at the time.[1]

Soon thereafter, Toney entered the lobby and also slid on the mat, but he did not fall and did not examine the mat. Likewise, Toney states that he too reported the problem to the

---

[1] Graham's Motel 6 bill is attached to the Declaration of Sharon Weyant, the Motel 6 manager, as an exhibit to the motion for summary judgment. *See* DE 36-6, pp. 9-10. The bill shows Graham's rent paid with cash on April 20, April 27, and May 4. This conflicts with the assertions by Toney and Graham that they both paid their rent and both separately reported the slipping mat to the desk clerk just before the fire broke out and Toney slipped and fell. The court has no way of ascertaining how the motel bill is generated and if cash taken in after 5:00 pm is entered on the same or next business day. Similarly, there is an inconsistency concerning whether the men all entered together or whether their contacts with the mat were staggered.

desk clerk when he paid his rent that same day.[2]  The three men met upstairs at the second floor room shared by the Toney brothers and were discussing dinner plans.  At approximately 6:00 p.m., a smoke alarm sounded, followed by a fire alarm.  Toney, Gerald, and Graham exited the room and saw smoke coming from a nearby second floor room.  Toney went to the door emitting smoke and knocked, but received no answer.  Graham went down to the front office and alerted Ajani to get off the phone and call 911 because the building was on fire.  Graham then returned upstairs. Gerald had returned to the room to retrieve their computer and their bags, then Gerald and Graham headed down the hallway, knocking on doors and yelling "fire" in an attempt to alert other guests on their way out.  Graham testified that he and Toney knocked on doors and evacuated dozens of guests from all floors of the Motel 6.

A Merrillville police officer, David J. Gonzalez, was the first emergency responder to arrive at the scene, being dispatched from his patrol in the immediate vicinity.  Officer Gonzalez went up to the second floor where the smoke was originating and encountered Toney, who offered his help in the emergency situation.  Toney told the police officer that he had fire fighting training.  The two men were in the second floor hallway near the smoking room and, because there was no response from within the room, Officer Gonzalez asked Toney to get a key to the

---

[2] The bill for Toney is not included in the exhibits.

smoking room from the desk clerk. Toney immediately headed downstairs, stepping on the mat in the vestibule at the bottom of the stairway. As he stepped on the mat, the mat slipped, and Toney fell and injured himself. Nevertheless, Toney got up and resumed his task, entering into the lobby, reporting the fire to the clerk, and obtaining a keycard for the smoking room. Toney took the keycard upstairs, but it would not open the door to the smoking room. He repeated the trek downstairs to the front desk and back up with a second keycard, but this keycard failed also. Toney thinks that it was on his third and final trip down the stairwell that the firefighters arrived at the motel and were heading up the same stairwell. Toney observed firemen slip on the mat, so he moved the mat out of the firemen's path, noting that the "floor and the rug had like suds on it." (Toney Dep., DE 48-3, p. 34) He described the suds as "like a foamy kind of substance" and "[s]udsy, foamy looking stuff." (Toney Dep., DE 48-3, p. 34) Toney then helped the firefighters that had responded to the emergency dispatch to pull the hose into the hotel before joining Gerald and Graham in the parking lot near his truck.

## Discussion

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is proper only if it is demonstrated that "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." ***Celotex Corp. v. Catrett***, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265

4

(1986); *Williams v. Excel Foundry & Machine, Inc.*, 489 F.3d 309, 310 (7th Cir. 2007); *Treadwell v. Office of the Illinois Secretary of State*, 455 F.3d 778, 781 (7th Cir. 2006); *Branham v. Snow*, 392 F.3d 896, 901 (7th Cir. 2004). The burden is upon the moving party to establish that no material facts are in genuine dispute, and any doubt as to the existence of a genuine issue must be resolved against the moving party. *Adickes v. S.H. Kress & Company*, 398 U.S. 144, 160, 90 S.Ct. 1598, 1610, 26 L.Ed.2d 142, 155 (1970); *Lawrence v. Kenosha County*, 391 F.3d 837, 841 (7th Cir. 2004). A fact is material if it is outcome determinative under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 212 (1986); *Ballance v. City of Springfield, Illinois Police Department*, 424 F.3d 614, 616 (7th Cir. 2005); *Hottenroth v. Village of Slinger*, 388 F.3d 1015, 1027 (7th Cir. 2004); *Palmer v. Marion County*, 327 F.3d 588, 592 (7th Cir. 2003). Even if the facts are not in dispute, summary judgment is inappropriate when the information before the court reveals a good faith dispute as to inferences to be drawn from those facts. *Spiegula v. Hull*, 371 F.3d 928, 935 (7th Cir. 2004); *Hines v. British Steel Corporation*, 907 F.2d 726, 728 (7th Cir. 1990). Finally, summary judgment "will not be defeated simply because motive or intent are involved." *Roger v. Yellow Freight Systems, Inc.*, 21 F.3d 146, 148 (7th Cir. 1994). See also *Miller v. Borden, Inc.*, 168 F.3d 308, 312 (7th Cir. 1999); *Plair v. E.J. Brach & Sons, Inc.*, 105 F.3d 343, 346 (7th

Cir. 1997); *United Association of Black Landscapers v. City of Milwaukee*, 916 F.2d 1261, 1268 (7th Cir. 1990).

In deciding a motion for summary judgment, the trial court must determine whether the evidence presented by the party opposed to the summary judgment is such that a reasonable jury might find in favor of that party after a trial.

> The inquiry performed is the threshold inquiry of determining whether there is the need for a trial--whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.
>
> [T]his standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict.
>
> *Anderson*, 477 U.S. at 250, 106 S.Ct. at 2511

See also *Scott v. Harris*, 550 U.S. 372, 127 S.Ct. 1769, 1776, 167 L.Ed.2d 686 (2007)("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for the purposes of ruling on a motion for summary judgment."); *Celotex Corp.*, 477 U.S. at 322-23, 106 S.Ct. at 2553; *Branham*, 392 F.3d at 901; *Lawrence*, 391 F.3d at 841; *Hottenroth*, 388 F.3d at 1027 (stating that a genuine issue is one on which "a reasonable fact finder could find for the nonmoving party"); *Schuster v. Lucent Technologies, Inc.*, 327 F.3d 569, 573 (7th Cir. 2003).

A few preliminary matters must be addressed.  First, Motel 6 argues in its motion that punitive damages by law are not applicable here, and Toney agrees and concedes the point in his response.  Similarly, Motel 6 disputes the mention of negligence *per se* in the complaint because Toney does not offer any statute, code, or regulation which has been violated.  Again, Toney agrees that none has surfaced during discovery and concedes the point in his response.  Therefore, as to Toney's claim for punitive damages and Toney's claim of negligence *per se*, summary judgment in favor of Motel 6 is **GRANTED.**

The elements that a plaintiff must prove to succeed on a negligence claim in Indiana are (1) a duty owed to the plaintiff, (2) a breach of that duty by the defendant, and (3) the damages proximately caused by the breach.  ***Bond v. Walsh & Kelly, Inc.***, 869 N.E.2d 1264, 1266 (Ind. App. 2007) (*citing* ***Peters v. Foster***, 804 N.E.2d 736, 742 (Ind. 2004)).  Breach of a duty and proximate cause issues are generally questions of fact.  *See* ***Peters***, 804 N.E.2d at 743; ***King v. Northeast Security, Inc.***, 790 N.E.2d 474, 484 (Ind. 2003).  Only where the facts are undisputed and lead to but a single inference or conclusion, may a court as a matter of law determine whether a breach of duty has occurred.  ***King***, 790 N.E.2d at 484; ***Cullop v. State***, 821 N.E.2d 403, 407 (Ind. App. 2005); ***Oxley v. Lenn***, 819 N.E.2d 851, 856 (Ind. App. 2004).

Motel 6 argues that the varying accounts of the slip-and-fall incident from the deposition testimony of Toney, his brother Gerald, and Graham necessitate a grant of summary judgment

because the defendant "should not be required to defend the Plaintiff's and his witnesses' three separate and distinct claims as to how and when Plaintiff sustained his injury". (Deft. Br. for Sum. J., p. 3) Indeed, these unreconciled issues of fact fully preclude summary judgment. Motel 6 is correct that genuine issues of fact require a jury to resolve any questions of breach and causation in this matter.

As a result, the only remaining issue for the court to address in this motion is the duty of care. "Generally, whether a duty exists is a question of law for the court to decide." *Rhodes v. Wright*, 805 N.E.2d 382, 386 (Ind. 2004)(*citing Hooks SuperX, Inc. v. McLaughlin*, 642 N.E.2d 514, 517 (Ind. 1994)). Whether a duty to exercise care arises depends upon the relationship of the parties and is an issue of law for the court. *Countrymark Cooperative, Inc. v. Hammes*, 892 N.E.2d 683, 688 (Ind. App. 2008)(*citing Douglass v. Irvin*, 549 N.E.2d 368, 369 (Ind. 1990)). "The question of whether a duty is owed in premises liability cases depends primarily upon whether the defendant was in control of the premises when the accident occurred." *Yates v. Johnson County Bd. of Commissioners*, 888 N.E.2d 842, 847 (Ind. App. 2008)(*citing Beta Steel v. Rust*, 830 N.E.2d 62, 70 (Ind. App. 2005)). Determining the existence of a duty may depend upon underlying facts that require resolution by a trier of fact. *Rhodes*, 805 N.E.2d at 386-87.

"The nature and extent of a landowner's duty to persons coming on the property is defined by the visitor's status as an

invitee, a licensee, or a trespasser." *Harradon v. Schlamadinger*, 913 N.E.2d 297, 300 (Ind. App. 2009)(*citing Rhoades v. Heritage Inv., LLC*, 839 N.E.2d 788, 791 (Ind. App. 2005)). An invitee is owed the highest duty of care: "the duty to exercise reasonable care for the invitee's protection while he or she is on the premises." *Harradon*, 913 N.E.2d at 300-01. The duty owed to a licensee is to refrain from willfully or wantonly injuring him or acting in a manner to increase his peril, which includes the duty to warn a licensee of any latent or non-obvious danger on the premises of which the landowner has knowledge. *Yates*, 888 N.E.2d at 848. A trespasser is owed merely the duty to refrain from wantonly or willfully injuring him after discovering his presence. *Id.* at 848-49.

*Yates* instructs with respect to the determination of the visitor's status:

> An invitee is a person who is invited to enter or to remain on another's land. There are three categories of invitee: the public invitee, the business visitor, and the social guest. Licensees and trespassers are persons who enter the land of another for their own convenience, curiosity, or entertainment and take the premises as they find them. Unlike trespassers, however, licensees have a privilege to enter or remain on the land by virtue of the landowner's or occupier's permission or sufferance. In determining whether an individual is an invitee or a licensee, the distinction between the terms "invitation" and "permission" is critical. (internal cites and quotes omitted).

888 N.E.2d at 849

9

The *Restatement (Second) of Torts* defines a public invitee as "a person who is invited to enter or remain on land as a member of the public for a purpose for which the land is held open to the public," and a business visitor as "a person who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of the land." *Restatement (Second) of Torts*, §332(2)-(3)(1965).

Incontrovertibly, Motel 6 owed a duty of care to Toney. The question to be determined is which duty applies. Motel 6 received an economic benefit from Toney's presence in the motel, and, as a paying motel guest, Toney was without a doubt a business visitor falling under the second category of invitee. However, Motel 6 argues that at the time that Toney slipped and fell, his status had changed into that of a licensee – specifically, a firefighter with "permission" to enter or remain on the premises rather than an "invitation" – and no longer a business invitee.

Although there are many Indiana cases discussing and differentiating invitees from licensees, the court cannot locate one – nor was one proffered by Motel 6 – where the status of an invitee changes into that of a licensee after the visitor was present on the premises. *See, e.g.,* **Yates**, 888 N.E.2d at 848-850 (determining that patron of town's parks and recreation fundraiser circus on school corporation property was not business invitee of school corporation because the school corporation received no economic benefit based on the gratuitous use allowed to the town, but

concluding that questions of fact remained as to the plaintiff's conduct as a public invitee, and the school corporation's conduct in allowing circus to be held on the property); ***Shafer & Freeman Lakes Environmental Conservation Corporation v. Stichnoth***, 877 N.E.2d 475, 481 (Ind. App. 2008)(determining that plaintiff's trek through private property and jump off of private pier for his own amusement and pleasure did not negate the undisputed fact that Lake Shafer, where he dove and consequently struck his head, is open to the public by the access provided via the Tippecanoe River and by the indisputable self-description in its Articles of Incorporation).

A closer look at the *Restatement (Second) of Torts* explains the scope of invitation:

> The possessor of land is subject to liability to another as an invitee only for harm sustained while he is on the land within the scope of his invitation. Thus an invitee ceases to be an invitee after the expiration of a reasonable time within which to accomplish the purpose for which he is invited to enter, or to remain. Whether at the expiration of that time he becomes a trespasser or a licensee will depend upon whether the possessor does or does not consent to his remaining on the land.
>
> Likewise the visitor has the status of an invitee only while he is on the part of the land to which his invitation extends – or in other words, the part of the land upon which the possessor gives him reason to believe that his presence is desired for the purpose for which he has come. In determining the area included within the invitation, the purpose for which the land is held open, or the particular business purpose for which the invitation is extended, is of great importance. . . .

*Restatement (Second) of Torts* §332 cmt. l
(1965)

Here, there is no dispute concerning Toney's presence in Motel 6: he was a paying business invitee residing at the motel. His purpose on the premises was not legally altered when the fire alarm sounded and he responded by alerting other hotel guests and attempting to get a key for the locked, smoking room.[3]

Likewise, the physical premises where Toney was helping and was injured, the hallway, the stairway, and the vestibule where the mat was located, are all unquestionably within the area which the hotel included within his business invitation. There can be no dispute about the reasonableness of Toney's actions or purpose at the time he was injured. *See* ***Star Transport, Inc. v. Byard***, 891 N.E.2d 1099, 1104-05 (Ind. App. 2008)(discussing the underlying public policy to encourage Good Samaritan efforts and concluding that it is logical to encourage persons who come upon an emergency situation or potentially dangerous predicament to help). *Cf.* ***Chapman v. Willey***, 134 P.3d 568, 569 (Colo. App. 2006)(holding that although the plaintiff had been a business invitee on prior visits to the hotel, the fact that plaintiff

---

[3]Any assertion that the manager, Weyant, told Toney to evacuate the hotel with the other guests and that he was present within the hotel without the consent of Motel 6 is not supported by the facts. Weyant spoke to Gerald Toney and told him not to accompany Ajani while she knocked on doors - an instruction which Gerald Toney ignored in an effort to help in the potentially perilous situation. At no point in the deposition snippets provided by Motel 6 does she identify that the Toney brother that she instructed to evacuate was the same Toney brother that she saw injured in the parking lot later. However, the deposition testimony of Toney, Gerald Toney, and Ajani all confirm this fact, as does the presence with and actions of Toney described by Officer Gonzalez.

left the premises and returned for the sole purpose of fighting with another man made the man a trespasser on this occasion). Toney was a business invitee when he returned to the hotel from his shift at the BP plant, when he went up to the room he shared with his brother, when he heard the smoke alarm in the neighboring room sound, when he responded by knocking on doors and attempting to open the smoking room with the police officer, and when he ran down the stairs, slipped, and fell on the mat in an effort to retrieve a passkey for the officer to open the door of the smoking room.  Therefore, the duty owed to Toney was as an invitee.

Motel 6 argues that, as a firefighter, Toney may not recover under the "fireman's rule."  The Indiana Supreme Court discusses the fireman's rule in detail in a recent opinion, ***Babes Showclub,Jaba, Inc. v. Lair***, 918 N.E.2d 308 (Ind. 2009), the subject of Toney's uncontested motion to supplement which the court **GRANTS**.  In *Babes*, the Court explains the initial establishment of the rule in 1893 and the expansion and development of the rule through more than a century of cases.  *Id.* at 310-11.  The Court summed up the case results, "if not the reasoning," stating that "an emergency responder may not recover for the negligence that created the situation to which the responder responds, but the rule applies only to emergency responders, and does not bar recovery for negligence unrelated to the creation of the emergency."  *Id.* at 312.  The Court states outright that public policy is the basis for the rule, noting that many emergencies

13

are the result of some form of negligence and that emergency responders should not be able to sue for responding as they are employed by the public to do. *Id.* at 313. This recent opinion restates the fireman's rule in summary that "the fireman's rule allows no claim by a professional emergency responder for the negligence that creates the emergency to which he or she responds." *Id.* at 313-14.

This rule does not apply to this matter. First, Toney was not acting as a professional emergency responder at the time that he was injured. He was not being paid by the local municipality which provided firefighters to the scene. In fact, although Toney had been a volunteer firefighter in the past, it was not in the Town of Merrillville. Second, Toney's claim of Motel 6's negligence is completely unrelated to any negligence that created the emergency, in this case, the fire. At no time has Toney claimed that Motel 6 was negligent for creating the situation that caused him to knock on doors to evacuate other hotel guests. The fireman's rule, therefore, has no application here.

Toney responds to the motion for summary judgment by arguing the applicability of the rescue doctrine. The Indiana Supreme Court first recognized the rescue doctrine in 1953, stating that "[o]ne who has, through his negligence, endangered the safety of another may be held liable for injuries sustained by a third person in attempting to save such other from injury." **Neal v. Home Builders, Inc.**, 111 N.E.2d 280, 284 (Ind. 1953). The **Neal** case turned on whether the defendants had been negligent in

creating the situation from which a child was rescued. *Id.* Over 40 years later, the Court stated that the doctrine

> contemplates a voluntary act by a rescuer who in an emergency attempts a "rescue" prompted by a spontaneous, humane motive to save human life, and which "rescue" the rescuer had no duty to attempt in the sense of a legal obligation or in the sense of a duty fastened on him by virtue of his employment.
>
> *Heck v. Robey*, 659 N.E.2d 498, 502 (Ind. 1995)(overruled on other grounds)(*citing* and *quoting* *Nastasio v. Cinnamon*, 295 S.W.2d 117, 120 (Mo. 1956))

These cases involve a duty established by the negligence of the defendant for necessitating a rescue, an interpretation of the doctrine which is inapplicable here.

Other cases discuss the rescue doctrine not in terms of duty, but as a response to a claim of contributory negligence on the plaintiff's part. *See* *Wright v. International Harvester Co., Inc.*, 528 N.E.2d 837, 841 (Ind. App. 1988)("A statement of the rescue doctrine, as it pertains to contributory negligence, provides: it is not contributory negligence for a plaintiff to expose himself to danger in a reasonable effort to save a third person or the land or the chattels of himself or a third person from harm. The law has so high a regard for human life that it will not impute negligence to an effort to preserve it, unless made under such circumstances as to constitute rashness in the judgment of prudent persons.")(internal citations omitted). This application does not apply to the situation at hand for two reasons. First, the court is not addressing the facts involved

in the breach or the proximate cause of Toney's slip and fall, but is leaving these genuine issues of fact for a jury. Second, the passage of the Comparative Fault Act in Indiana eliminates the contributory negligence analysis under the rescue doctrine. ***Star Transport***, 891 N.E.2d at 1104 n.4.

Toney filed three motions to strike, requesting that the declarations of Kevin Wright, the Chief of the Merrillville Volunteer Fire Department, and Perry James Herzog, the Chief of the Ross Township Fire Service, be stricken in their entirety because they are not sworn statements, and that portions of the declaration of Sharon Weyant, the manager of the Motel 6, be stricken because of ambiguity. To support a claim that has been challenged on summary judgment, an affidavit may not be based upon "self-serving statements . . . without factual support in the record." ***Thanongsinh v. Board of Education***, 462 F.3d 762, 781 (7th Cir. 2006)(*quoting* ***Butts v. Aurora Health Care, Inc.***, 387 F.3d 921, 925 (7th Cir. 2004)). Rather, Federal Rule of Civil Procedure 56(e) requires that an affidavit must be "made on personal knowledge [and] set forth facts as would be admissible in evidence."

The declarations of the two firefighters both concern observations made after the firefighters' arrival at Motel 6 and refer to the condition of the mat and lobby floor under the mat. The particular statement of Weyant which Toney requests the court strike concerns the mopping of the floor under the mat. Because all three declarations concern facts pertaining to the breach or

16

the proximate cause of the negligence claim, and none of the declarations pertain to the duty that Motel 6 owed to Toney which is addressed here, the three motions to strike are **DENIED AS MOOT.**

_____

For the foregoing reasons, the Motion for Summary Judgment [DE 35] filed by the defendant, Accor North America d/b/a Motel 6, on August 17, 2009, is **GRANTED IN PART** and **DENIED IN PART**, the Motion to Strike Declaration of Kevin Wright [DE 52] filed by the plaintiff, Gregory G. Toney, on September 17, 2009, is **DENIED AS MOOT**, the Motion to Strike Declaration of Perry James Herzog [DE 53] filed by the plaintiff on September 17, 2009, is **DENIED AS MOOT**, the Motion to Strike Portion of Declaration of Sharon Weyant [DE 54] filed by the plaintiff on September 17, 2009, is **DENIED AS MOOT**, and the Motion for Leave to File Supplemental Authority [DE 67] filed by the plaintiff on December 21, 2009, is **GRANTED.**

ENTERED this 29th day of March, 2010.


s/ ANDREW P. RODOVICH
United States Magistrate Judge